**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| MARC VIANELLO,<br>a resident, taxpayer, and registered voter in<br>the City of Prairie Village, Kansas,<br><br>     *Plaintiff,*<br><br>v.<br><br>CITY OF PRAIRIE VILLAGE, KANSAS,<br>a municipal corporation,<br><br>     *Defendant.* | )<br>)<br>)<br>)<br>)  Case No.:<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

COMES NOW Plaintiff, Marc Vianello, a citizen, resident, taxpayer, qualified elector, and registered voter in the City of Prairie Village, Kansas, by and through his counsel, Fritz Edmunds of Edmunds Law Office, LLC, in Overland Park, Kansas, and brings this cause of action for declaratory judgment and injunction against Defendant, City of Prairie Village, Kansas (the "City" or "Prairie Village").

### I. INTRODUCTION

Plaintiff seeks a determination: (a) that the *draft* Prairie Village Charter Ordinance No. 28, allegedly enacted July 18, 2016, was actually only recommended to the City Council from the Committee of the Whole ("Draft Charter Ordinance"), and is invalid because it was not officially adopted by the governing body, the City Council; (b) that the Draft Charter Ordinance, which the City numbered "28" is invalid to the extent that the 2016 draft Charter Ordinance enacted to purchase streetlights purports to exempt the City in 2025 from the voter approval requirements and debt limitations of K.S.A. 13–1024a for issuing $30 Million in 30-year general obligation bonds for a new City Hall; (c) that the draft Charter Ordinance No. 28 is otherwise

1

constitutionally ineffective at bypassing the statutory requirement for a majority vote of electors in public bond elections in general; (d) that the draft Charter Ordinance No. 28 is inapplicable to the specific City Hall bond issue in particular; (e) that Bond Resolution No. 2025-04 for a new $30 Million City Hall is illegal because it violates K.S.A. 13–1040a; (f) that the use of taxpayer money from expired bonds to pay for the new City Hall bonds is illegal and void; and (g) for other just and equitable relief. In support thereof, Plaintiff states as follows:

## II.   PARTIES

1.      Plaintiff, Marc Vianello, is a citizen, resident, and taxpayer of the City of Prairie Village, Johnson County, Kansas. Plaintiff is a registered voter who resides in the voting area in which he seeks to vote and is a "qualified elector" under the Kansas Constitution.

2.      Plaintiff has standing to bring this action as a person whose rights and legal interests, including without limitation the right to be heard and vote on municipal bond issuance and protection from excessive municipal debt and taxes to pay for same, are directly affected by the City's actions and its plan to fund the City Council members' project through the issuance of bonds under the draft Charter Ordinance No. 28. *See Blevins v. Board of Douglas County Comm'rs*, 251 Kan. 374, 382, 834 P.2d 1344 (1988).

3.      Plaintiff has standing under both federal and state law. *See* K.S.A. 60–907(a), Illegal acts of public officers.[1]

4.      Additional party plaintiffs may be joined under K.S.A. 60–907(c).[2] Plaintiff is not

---

[1] 60–907. Illegal acts of public officers.
(a) Illegal tax, charge or assessment. Injunctive relief may be granted to enjoin the illegal levy of any tax, charge or assessment, the collection thereof, or any proceeding to enforce the same.
[2] K.S.A. 60-907(c) Joinder. Any number of persons whose property is or may be affected or whose taxes may be increased by the illegal acts mentioned in subsections (a) and (b) of this section may join in the petition for injunction.

alone in his demand to vote on the new City Hall project, bonds and taxes. As shown by the only known poll taken on the issue, 85% of Prairie Village residents want to vote on the new City Hall project, bonds, and taxes. In addition, approximately 500 Prairie Village residents have decided to take the affirmative step of making their position publicly known by placing yard signs in their yards stating, "Let Us Vote." Dozens more have openly and publicly, at Prairie Village City Council meetings, expressed their desire to vote on this issue.[3]

5.      Defendant, City of Prairie Village, Kansas, is a municipal corporation organized under the laws of the State of Kansas, with its principal offices located at 7700 Mission Road, Prairie Village, Kansas 66208. It can be served by serving Eric Mikkelson, current mayor of Prairie Village, Kansas, or Adam Geffert City Clerk for Prairie Village, Kansas at 7700 Mission Road, Prairie Village, KS 66208 and Defendant can be served and notified electronically at mayor@pvkansas.com, ageffert@pvkansas.com, or cityclerk@pvkansas.com.

## III.   JURISDICTION AND VENUE

6.      Plaintiff brings this action under 42 U.S.C. § 1983 and 42 U.S.C. § 1988 to redress the deprivation, under color of state law, of rights secured by the U.S. Constitution, and under state law.

7.      This Court has original jurisdiction over this action because the matters in controversy arise under the U.S. Constitution. 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 in that the non-federal claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Art. III of the United States Constitution, with such supplemental

---

[3] The Prairie Village Code of Ethics States: "General expectations of conduct. All members of the governing body should be loyal to the objectives expressed by the electorate, as understood by such members, and the programs developed to attain those objectives." City Code 1-212(c).

jurisdiction including claims that involve the joinder or intervention of additional parties.

8.    This Court has general personal jurisdiction over Defendant, which is a municipal corporation in this judicial district and under Fed. R. Civ. P. 4(k)(1)(A), and specific jurisdiction because all of the acts set forth herein took place in this judicial district under the color of state and municipal law.

9.    Venue is proper in the U.S. District Court for the District of Kansas because (1) Defendant resides in this judicial district, and (2) all of the events giving rise to Plaintiff's claims occurred, and will occur, in this judicial district. 28 U.S.C. § 1391(a)(2) and (b).

10.    This Court has the authority to enter a declaratory judgment pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201–2202, and authority to issue injunctions under 28 USC § 1651.

## IV.  FACTS COMMON TO ALL COUNTS

**The State of Kansas has ensured public protection through its statutes and its Constitution.**

11.    Kansas Statutes and the Kansas Constitution provide citizens with protection against rogue city council members funding their pet projects on the backs of taxpayers by obligating them to indebtedness for decades without a public vote.

12.    K.S.A. 13–1024a expressly requires a majority of voters to approve bond issuance in excess of $100,000 in any one year.[4]

13.    K.S.A. 13–1024a exempts first-class cities, like Prairie Village, from bond elections for certain improvements,[5] but only if "the total amount of bonds issued for such

---

[4] K.S.A. 13–1024a allows cities to borrow money and issue bonds for specific purposes, "Provided, That no bonds shall be issued for such purposes unless the same were authorized by a majority of the votes cast at an election held for that purpose." (emphasis added)
[5] "For the purpose of paying for any bridge, viaduct, public building, including the land necessary therefor, for lands for public parks and developing the same, within or without the city, for the establishment and construction of crematories, desiccating or reduction works, including

purposes [does] not exceed the sum of one hundred thousand dollars ($100,000) in any one year."

14.      The Kansas Constitution was amended in 1961 to allow cities home rule authority for their own affairs through the enactment of charter ordinances, except in circumstances that are present in this action. KAN. CONST. Art. 12 § 5 (the "Home Rule Amendment").

**Certain City Council members seek to fund their project through illegal means without a public vote.**

15.      On June 16, 2025, the Prairie Village City Council (the "City Council") voted in regular session to spend $30 Million on a new City Hall to office 22 employees and to issue general obligation bonds to finance said project without a bond election vote of the people. The City Council attempted to make the Bond Ordinance effective immediately without chance for public protest and election. **Exhibit 1** – Resolution 2025–04, attached hereto and incorporated herein by this reference.

16.      Prairie Village citizens of all stripes, from all walks of life, all age groups, and all political persuasions, overwhelmingly desire a vote on the City Council's plans to issue $30 Million in general obligation bonds and new taxes to pay for the lame-duck City Council's project.[6] 85% of the citizens polled want a vote on the project, only 6% did not want a vote, and

---

the land necessary therefor, within or without the city, or for the improvement, repair or extension of any waterworks, sewage disposal plant, electric light plant, crematory, desiccating or reduction works or other public utility plant owned by the city, and for the purpose of rebuilding, adding to or extending to the same from time to time ..."

[6] State statutes require bond elections for expensive or long-term projects because a city council usually exists for only 2 years before nearly half of the City Council is up for election and a completely new group of council members take office. Here, 6 out of 13 of the Prairie Village City Council members will be gone in November, and 4 of the 6 are not even running again.

9% were not sure.[7] On information and belief, the City Council members know this but have chosen to proceed without a vote, nevertheless.

| Should Prairie Village hold an election so residents can vote on whether to spend $30 million on the project? | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **435 Adults** | All | Age | | | | Home | | Ideology | | |
| Credibility Interval: ± 3.6 pct pts | | 18-34 | 35-49 | 50-64 | 65+ | Own | Rent | Conserv | Mod. | Liberal |
| Should hold an election | 85% | 84% | 82% | 90% | 85% | 87% | 83% | 92% | 83% | 86% |
| Should not hold an election | 6% | 9% | 8% | 2% | 3% | 6% | 5% | 4% | 6% | 7% |
| Not Sure | 9% | 7% | 10% | 7% | 12% | 7% | 12% | 3% | 11% | 7% |
| Source: SurveyUSA poll conducted May 18-29, 2025 on behalf of Kansas Policy Institute | | | | | | | | | | |

17.     The Prairie Village City Council is attempting to bypass the statutory requirement for a bond election, in order to fund the $30 Million project through an old 2016 charter ordinance that was voted on by the City Council members in a Committee of the Whole session, not regular session, specifically for a $3 Million streetlights project. **Exhibit 2** – Draft Charter Ordinance No. 28, attached hereto and incorporated herein by this reference (*See also* Exhibit 1).

18.     As referenced above, under the 1961 "home rule" amendment to the Kansas Constitution, "Any city may by charter ordinance elect *in the manner prescribed in this section* that the whole or any part of any enactment of the legislature applying to such city, other than enactments of statewide concern applicable uniformly to all cities, other enactments applicable uniformly to all cities, and *enactments prescribing limits of indebtedness*, shall not apply to such city." Art. 12 § 5(c)(1) (*emphasis* added).

19.     K.S.A. 13–1024a requires authorization by a majority of voters in a vote of the people in a bond election before cities may issue bonds, with certain exceptions.

20.     K.S.A. 13–1024a also provides that cities of the first-class, like Prairie Village, may borrow money and issue bonds "without such bonds having been authorized by a vote of the

---

[7]  https://sentinelksmo.org/new-polling-shows-prairie-village-residents-overwhelmingly-want-to-vote-on-proposed-30-Million-bond-issue/

people, ***but the total amount of bonds issued for such purposes shall not exceed the sum of one hundred thousand dollars ($100,000) in any one year***" (***emphasis*** added).

21.     K.S.A. 13–1024a is an enactment of the legislature prescribing limits of indebtedness because Kansas statute K.S.A. 13–1024a limits indebtedness by requiring a public vote in the event the indebtedness exceeds $100,000 in any one year.

22.     The Home Rule Amendment, therefore, does not allow the City to bypass the citizen protections of K.S.A. 13–1024a to issue bonds in excess of $100,000 in any one year without a bond election.

23.     Consequently, Charter Ordinance No. 28 does not relieve the City from its obligation to hold a bond election for the proposed $30 Million City Hall project, and the draft Charter Ordinance No. 28 cannot be used to deny Plaintiff's right to vote as guaranteed by the U.S. Constitution, the Kansas Constitution, and Kansas statute.

24.     The City Council's vote on Resolution 2025-04, expressly relying on "Charter Ordinance No. 28," to issue $30 Million in general obligation bonds by attempting to bypass K.S.A. 13–1024a and issue the bonds without approval from a majority of the voters in a public election is unconstitutional and void because the Home Rule Amendment prohibits a city from using a charter ordinance to opt out of or exempt itself from certain state statute enactments.

25.     There are four (4) (potentially overlapping) types of state statute enactments that the Home Rule Amendment specifically states cannot be bypassed through charter amendment.

26.     Here, the relevant type of statutory enactment is (4) enactments prescribing limits of indebtedness. KAN. CONST. Art. 12, § 5(b); *Farha v. City of Wichita*, 284 Kan. 507, 514, 161 P.3d 717 (2007) (1-3 types not relevant in this case).

27.     For the reasons stated herein above and below, Prairie Village Charter Ordinance

No. 28 does not legally exempt the City from the public vote of its citizens in a bond election for the purposes of the $30 Million new City Hall project of the City Council.

28.    In addition to the Home Rule Amendment preventing charter amendments from bypassing statutory enactments prescribing limits of indebtedness, the draft Charter Ordinance No. 28 the City relies on was not legally enacted, so it would not bypass state law requiring a vote of the public, even if it were not expressly excluded by the Home Rule Amendment.

**Procedural lapses establish that the draft Charter Ordinance relied on by the City was never officially enacted.**

29.    Nine years ago, on July 18, *2016*, the City Council, voted on the draft Charter Ordinance No. 28 during a Committee of the Whole. **Exhibit 3** – July 18, 2016 Agenda and Official Meeting Minutes.  The Committee of the Whole is not authorized to enact ordinances. Prairie Village City Code 1-804(c-d) (council committee of the whole *empowered to make "recommendations* to the Governing Body") (*emphasis* added))

30.    Because it was in a Committee of the Whole session' which cannot be used to conduct the regular business of the City Council, Charter Ordinance No. 28 was never actually enacted by the City under the Kansas Constitution's Art. 12 § 5's strict prerequisites for municipalities exempting themselves from Kansas statutes.

31.    The Committee of the Whole voted to accept the draft Charter Ordinance No. 28,[8] which was effectively a recommendation to the City Council, as defined under the City's own Code. But the City Council, the governing body, never officially acted on the recommendation.

---

[8] Draft Charter Ordinance No. 28 was entitled "A Charter Ordinance Exempting The City Of Prairie Village, Kansas, From The Provisions of K.S.A. 13–1024a And Providing Substitute And Additional Provisions On The Same Subject Relating To General Improvements And The Issuance Of Bonds For The Purpose of Paying For Said Improvements; And Repealing Charter Ordinance No. 25."

32.    The draft Charter Ordinance No. 28 purports to exempt the City, *ad infinitum*, from the provisions of K.S.A. 13–1024a, which governs the issuance of general obligation bonds by cities, including limits on the amount of bonded indebtedness without voter approval for bond issuances in excess thereof.

**Deceptive and ineffective overreach without due process doomed the draft Charter Ordinance.**

33.    The draft Charter Ordinance No. 28 was voted on in 2016 expressly for a streetlight project, without notifying citizens that the proposed Charter Ordinance would purportedly allow the City Council to issue bonds and incur public debt without *ever* holding a vote of the public for *any* improvement project thenceforth.

34.    The City surreptitiously undertook draft Charter Ordinance No. 28 under the subterfuge that it was merely for a streetlight project. And the agenda for the unauthorized action of voting on official business during a Committee of the Whole session advances that subterfuge: "*COU2016-46 Consider approval of Charter Ordinance #28 for the issuance of bonds ***for the purchase of the streetlight system from KCPL***" (Exhibit 3 (***emphasis*** added)).

35.    Even the Public Works Recommendation in the City Council Packet for the July 18, 2016 City Council Meeting stated: "RECOMMENDATION Approve Charter Ordinance #28 for the issuance of bonds ***for the purchase of the streetlight system from KCPL.***" **Exhibit 4 –** Public Works Recommendation (***emphasis*** added).

36.    So, not only were the citizens of Prairie Village kept in the dark, but the individual city councilmembers were likely also misled.

37.    The Excerpt of minutes from July 18, 2016 ("Purported Excerpt") was also deceptive because it contradicts the actual July 18, 2016 Agenda and Meeting Minutes. **Exhibit 5 –** Purported Excerpt.

38.     The *actual* July 18, 2016 Agenda and Minutes states that the Charter Ordinance (for the issuance of bonds for the purchase of the City's Streetlight System) was taken up during The Committee of the Whole (Exhibit 3), but the Purported Excerpt indicates a vote during regular session of the governing body (Exhibit 5).

39.     The Purported Excerpt, allegedly taken from the minutes, follows instead the predetermined form prepared by bond counsel five days *before* the July 18, 2016 meeting on July 13, 2016 (the "Predetermined Form"). **Exhibit 6** – Predetermined Form.

40.     The Predetermined Form was included in the City Council Packet prior to the meeting. **Exhibit 7** – City Council Packet.

41.     The Purported Excerpt follows the Predetermined Form *verbatim*, repeating even the form creator's imprimatur at the top: "Gilmore & Bell, P.C. 7/13/2016" (Exhibit 6).

42.     So the assertion therein that "The governing body met in regular session at the usual meeting place in the City, at 7:00 P.M.," taken straight from the Predetermined Form in advance of the meeting, contradicts the official agenda and minutes and is another procedural lapse making the draft Charter Ordinance even more violative of procedural due process.

43.     Additionally, the official minutes of the July 18, 2016 meeting of the governing body states that Councilman Odell abstained, but the purported Excerpt indicates Councilman Odell voted Yea (Exhibit 5).

44.     The abundance of procedural lapses naturally raises the legitimate question: "Was the preordained Purported Excerpt created before the meeting ever occurred?"

45.     The requisite verifications from the City Clerk for both the meeting minutes and the contradictory Purported Excerpt are neither or notarized, nor are they verified under penalty of perjury, in violation of K.S.A. 53-601(b)(2). There also appears to be no official seal.

10

**The purported substitute provisions were ineffective.**

46.     The draft Charter Ordinance, not passed by the City Council but voted on during the Committee of the Whole session, effectively a recommendation to the governing body, removes critical majority election and dollar limitation language from K.S.A. 13–1024a, without replacing it with anything, in a misleading effort to allow the City to borrow money and issue its general obligation bonds and/or temporary notes without any of the statutorily-required limitations or any substitute limitations for: "paying for any bridge, viaduct, street, sidewalk or pedestrian way improvement, airport, public building or structure, parking improvement, or other public utility or works, including any appurtenances related thereto and the land necessary therefor, for lands for public parks and recreation facilities, including golf courses, stadiums and community centers, and developing and making improvements to the same, within or without the city, for the establishment, development and construction of crematories, desiccating or reduction works, including any appurtenances related thereto and the land necessary therefor, within or without the city, or for the improvement, repair or extension of any streetlights, waterworks, sanitary sewer facilities, sewage treatment or disposal plant, sewage system, storm water improvement, electric light plant, crematory, desiccating or reduction works or other public utility plant or works owned by the city, and for the purpose of rebuilding, adding to or extending to the same or acquiring land necessary therefor from time to time, as the necessities of the city may require, or for the acquisition of equipment, vehicles and other personal property to be used *in relation to any of the improvements authorized herein*." (Exhibit 2 (*emphasis* added)).

47.     However, the Committee of the Whole's draft Charter Ordinance No. 28 did not "authorize" any improvements, it only purported to authorize spending without a public vote. As

11

seen in Exhibit 10 (defined hereinafter), the streetlight improvement was authorized by separate ordinance. So the draft Charter Ordinance No. 28 contained no "improvements authorized herein." And because it was voted on in the Committee of the Whole, officially, it was only a recommendation to be acted on by the governing body, meeting in regular session (Exhibit 2). This point is made especially clear by City's bond counsel, Gilmore & Bell, P.C., in its Predetermined Form, that expressly directed the Council to act in regular session (Exhibit 6).

48. Because the draft Charter Ordinance No. 28 does not authorize any improvements (and certainly not the new City Hall), it could not bypass the statutory requirement for approval by a majority of the electors in a public election, even if it were adopted in a regular session of the City Council.

49. The draft Charter Ordinance No. 28 also fails to provide substitute provisions to protect the voting, taxpaying residents through any provisions to exert local control by limiting either the dollar amount of indebtedness or the ability to prevent long-term debt and taxation by rogue City Councilmembers through a vote of the public.

**The draft Charter Ordinance was hidden for more than eight years.**

50. The Home Rule Amendment also requires: "Each charter ordinance becoming effective shall be recorded by the clerk in a book maintained for that purpose with a statement of the manner of adoption and a certified copy *shall* be filed with the secretary of state, who shall keep an index of the same." KAN. CONST. Art. 12 § 5a(b)(3) (*emphasis* added).

51. But the draft Charter Ordinance No. 28 was not filed with the secretary of state after A Committee of the Whole voted, further establishing that it was never effectively enacted and not officially recorded.

52. It wasn't until January 21, 2025, *after* the City Council had already preordained

its controversial, widely-opposed, project of a $30 Million new City Hall to office 22 people, that the City decided to file the old draft Charter Ordinance in attempt to bypass the statutory requirement for public vote on the unpopular $30 Million debt. **Exhibit 8** – Secretary of State Index Excerpt.[9]

53.     The draft Charter Ordinance No. 28 was also vague and its title did not notify the citizen taxpayers of Prairie Village of the purported elimination of public vote on *all* improvement and *all* construction bond issuances thenceforth.

54.     Only one with legal training and intimate knowledge of K.S.A. 13–1024a would understand that the draft Charter Ordinance No. 28 was attempting to eliminate *all* public votes for *all* improvements by the City of Prairie Village, for *all* time.

55.     Despite its legal and procedural flaws and its surreptitious nature, the City Council relied on the draft Charter Ordinance No. 28—a 2016 ordinance for purchasing streetlights—to railroad Bond Resolution No. 2025-04 in attempt to issue $30 Million in 30-year general obligation bonds in 2025, to fund the project of erecting a City Hall, without submitting the bond issue to a vote of the citizens, in violation of the debt limitations and public vote requirements of K.S.A. 13–1024a. *See* Exhibit 1**.**

### V.   APPLICATION OF KANSAS LAW

56.     K.S.A. 13–1024a mandates voter approval for certain general obligation bonds, such as those for public improvements in excess of $100,000.

57.     The Kansas Constitution, Art. 12, Section 5(b), explicitly prohibits cities from using charter ordinances to override state laws prescribing limits of indebtedness.

58.     Draft Charter Ordinance No. 28, which does not itself authorize any projects, so it

---

[9] https://sos.ks.gov/general-services/governmental-entity/INDEX-City-Charter-Ordinance.pdf

is technically self-defeating, seeks a blanket exemption from K.S.A. 13–1024a for "general improvements" without specifying the scope, purpose, or timeframe of applicable projects.

59.     Draft Charter Ordinance No. 28 is inapplicable to the 2025 proposed $30 Million bond issuance for a new City Hall.

60.     The City has previously relied on draft Charter Ordinance No. 28 to incur $5 Million in temporary notes, including issuing fees, that are being paid until reimbursed by the illegal $30M bonds without an election; and $1.15 Million in taxes for bonds that have expired and have no payments due, that are earmarked for the new City Hall bond repayment, which violates and will continue to violate (a) K.S.A. 10-117 (misuse of bond proceeds); (b) K.S.A. 12-1737 (requiring a specific resolution to levy tax for a building fund); and (c)the City was obligated to allocate taxes levied and collected for the payment of the principal and interest on the Bonds.

61.     The City's reliance on draft Charter Ordinance No. 28 for the 2025 Bond Resolution was illegal, and in violation of K.S.A. 13–1024a, warranting  K.S.A. 60–907(a) injunctive relief.

### COUNT I
**Declaratory Judgment that Draft Charter Ordinance was not legally adopted because (a) it was not passed at a regular meeting with notice and an opportunity to be heard by the public; (b) it was not timely filed with the Kansas Secretary of State; and (c) other fatal procedural flaws.**

**A.     Defendant Violated Kansas Procedural Due Process and Art. 12 § 5a(b)(3) of the Kansas Constitution.**

39.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

40.     The draft Charter Ordinance was not timely filed with the Kansas Secretary of State, rather it was kept under wraps more than 8 years.

41.     When the draft Charter Ordinance No. 28 was filed, it was not filed with the requisite statement of the manner of adoption because it was not adopted in a proper manner at a proper meeting with authority to pass a charter ordinance or any ordinance.

42.     The draft Charter Ordinance was not adopted at a regular meeting of the Prairie Village City Council. Instead, it was voted on, in violation of City Code, at a work session known as Committee of the Whole where the public has no ability to comment.

43.     Passage of local law requires due process, and—if a charter ordinance—timely filing as mandated by the Kansas Constitution, both of which implicate due process.

62.     The right to vote implicates a property or liberty interest, and is of constitutional consequence. "All persons, for injuries suffered in person, reputation or property, shall have remedy by due course of law, and justice administered without delay." KAN. CONST. Bill of Rights, § 18. Kansas courts have long held that "remedy by due course of law" refers to due process. *State v. N.R.*, 314 Kan. 98, 113, 495 P.3d 16 (2021), *cert. denied* —— U.S. ——, 142 S. Ct. 1678, 212 L.Ed.2d 583 (2022). Due process may refer to substantive due process or procedural due process; procedural due process means notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 462, 447 P.3d 959 (2019).

63.     Historically, Kansas courts have analyzed section 18 of the Kansas Constitution Bill of Rights as coextensive with its federal counterpart. *State v. Boysaw*, 309 Kan. 526, 537-38, 439 P.3d 909 (2019). "In reviewing procedural due process, the court first must determine whether a protected liberty or property interest is involved. If so, the court the must determine the nature and extent of the process which is due." *N. R.*, 314 Kan. At 113, 495 P.3d 16.

64.     The right to procedural due process is not limited to fundamental rights; it may be

applied to state-created "privileges." *Creecy*, 310 Kan. at 463, 447 P.3d 959 (holding person is entitled to due process before driving license taken away). A liberty interest may arise from the Constitution itself or it may arise from an expectation or interest created by state law. *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005) (citing *Wolff v. McDonnell*, 418 U. S. 539, 556–558 (1974)).

65.    The scope of a claimed state-created liberty interest is determined by state law. *Montero v. Meyer*, 13 F.3d 1444, 1447 (10th Cir. 1994). In Kansas, "[t]he concept of 'liberty' is broad." *N.R.*, 314 Kan. at 113, 495 P.3d 16 (recognizing liberty interest includes protection of a person's good name). *League of Women Voters of Kansas v. Schwab*, 63 Kan. App.2d 187, 214-215 (2023), *rev'd and aff'd on other grounds*, 318 Kan. 777 (2024).

66.    The right to vote is a fundamental right. Indeed, the right to vote is a constitutional right under Art. 5 of the Kansas Constitution, *League of Women Voters*, 318 Kan. 777 or under Section 2 of the Kansas Constitution Bill of Rights. *See League of Women Voters*, 318 Kan. at 811-859 (J.J. Rosen, Biles, and Standridge, concurring and dissenting), or at least a critical liberty interest.

44.    Local government adopting a charter ordinance to avoid the state government's law protecting its citizens involves a loss of rights, so the constitutional, statutory and procedural safeguards requiring enactment at a regular meeting is a common, statutory and local law liberty right, as is timely filing with the Kansas Secretary of State. These liberty interests are created by the Kansas Constitution itself.

## B.    Violating Federal Procedural Due Process under U.S. Const. Amend. XIV, 42 U.S.C. § 1983

45.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

46.     A municipality can only be held liable under 42 U.S.C. § 1983 for the actions of its employees when the action is taken pursuant to the municipality's "official policy," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)), or for acts it has sanctioned or ordered, *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188 (10th Cir. 2010) (citing *Pembaur*, 475 U.S. at 480, 106 S.Ct. 1292). This is because a municipality cannot be held liable simply under a theory of *respondeat superior*. *Pembaur*, 475 U.S. at 478, 106 S.Ct. 1292; *see also Monell*, 436 U.S. at 694, 98 S.Ct. 2018. "Rather, to establish municipal liability, a plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993). *DeHart v. Bd. of Co. Comm'rs of Riley Co,, Kansas*, 463 F. Supp. 3d 1219,. 1127-28 (D. Kan. 2020) (J. Teeter).

47.     A municipal policy can be shown by "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Here, three official policies adopted by the Prairie Village City Council are at issue: (1) Draft Charter Ordinance No. 28, which the Governing Body at least relied on as if it were official policy; (2) Bond Resolution 2025-04; and, (3) taxing for expired bonds to apply to bonds for the new City Hall project.

48.     Draft Charter Ordinance No. 28 and Bond Resolution 2025-04 (which relies on Draft Charter Ordinance No. 28 as its authority) directly causes the injury to Plaintiff by unconstitutionally removing his fundamental, 1st and 14th Amendment, and statutory right to vote on the issuance of bonds in excess of $100,000 per year (here, $27M) before they are issued. Taxation for unexpired bonds and applying that tax money to bonds for the new City Hall project directly injured and continues to injure Plaintiff by illegally taxing him both past and future in

17

violation of his Due Process and statutory rights, including the right to petition for an election and vote. Finally, attempting to make the Bond Resolution immediately effective, rather than providing the usual notice by publication and the resulting access to a protest petition also deprives Plaintiff of Due Process, the right to petition his government, and the right to vote on bonds.

49.    Procedural due process is found in the 14th Amendment of the U.S. Constitution.

50.    Prairie Village followed a policy which voted on Draft Charter Ordinance No. 28 not at a regular meeting, and filed it untimely with the Kansas Secretary of State.

51.    For the same reasons that the Kansas due process is violated, the federal due process is violated.

**COUNT II**
**Declaratory Judgment that Draft Charter Ordinance No. 28 substantively violates the Kansas Constitution because K.S.A. 13–1024a prescribes limits of indebtedness.**

**A.    Violating Art. 12 § 5(b) Kansas Constitution.**

52.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

53.    Art. 12, Section 5(b) of the Kansas Constitution prohibits cities from using charter ordinances to override state laws prescribing limits of indebtedness.

54.    Relying on Charter Ordinance No. 28 to exempt the City from the K.S.A. 13–1024a $100,000 bond limitation and/or to bypass the election of the people in a bond election, as well as failing to provide substitute provisions for protecting citizens, violates the Kansas Constitution. So, Charter Ordinance No. 28 is inapplicable.

55. To the extent Defendant seeks to exempt the City from the $100,000 bond limitation without a vote in a bond election through the unconstitutional and invalid Charter Ordinance No. 28, Resolution 2025-04 is null and void.

**B.      Violating Infringement of Free Speech, Free Association, Equal Protection, and Right to Vote under U.S. Const. Amends. I & XIV, 42 U.S.C. § 1983.**

58. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

59. K.S.A. 13–1024a prescribes a limitation on issuing bonds in excess of $100,000 in the form of a majority vote.

60. Draft Charter Ordinance purports to deprive Plaintiff and others of that fundamental and statutory right to vote, but is unconstitutional.

61. Thus, Plaintiff and other citizens of Prairie Village are deprived of the right to vote on the new City Hall project bond indebtedness in violation of the right to vote protected by the First and Fourteenth Amendments.

62. The resulting deprivation of the right to vote, and the holding of an election before issuing the bonds for the new City Hall project deprives Plaintiff and other Prairie Village citizens of the meaningful free speech rights that would go along with opposing (or supporting) such an election and/or the new City Hall project in violation of the First and Fourteenth Amendments.

63. The resulting deprivation of the right to vote, and the holding of an election before issuing the bonds for the new City Hall project deprives Plaintiff and other Prairie Village citizens of the meaningful right to associate with those would oppose (or support) such and election and/or the new City Hall project in violation of the First and Fourteenth Amendments.

64.    K.S.A. 13–1024a guarantees to all citizens of Kansas cities of the first class the right to vote on bonds in excess of $100,000 before they are issued, but Draft Charter Ordinance, by depriving Plaintiff and other Prairie Village citizens of that right to vote, denies Plaintiff and Prairie Village citizens of the equal protection of the laws in violation of the First and Fourteenth Amendments.

65.    The resulting deprivation of the right to vote, and the holding of a vote before issuing the bonds for the new City Hall project deprives Plaintiff and other Prairie Village citizens of the meaningful free speech rights that would go along with opposing (or supporting) such an election in violation of the First and Fourteenth Amendments.

**COUNT III**
**Declaratory Judgment that Draft Charter Ordinance substantively violates the Kansas Constitution because it does not provide substitute provisions for the indebtedness limitations or a majority election for bonds in excess.**

**A.    Violating Art. 12 § 5(c) (2) Kansas Constitution.**

66.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

67.    Art. 12, Sec. 5(c)(2) of the Kansas Constitution requires substitution provisions if a city wishes to supplant the point at which a public bond election is required under K.S.A. 13–1024a.

68.    No substitute provisions were provided in Charter Ordinance No. 28, eliminating the bond dollar limitation, without substitution of a different dollar amount (for no public vote) and eliminating the bond limitation (requiring public vote),

69.    Without any substitution offered, Plaintiff and other citizens taxpayer voters are left without protection from the government or recourse in the event of mismanagement or intentional self-dealing.

20

70.     As a result, Draft Charter Ordinance No. 28 was unconstitutional and void, and accordingly so is the Bond Resolution 2025-04.

**B.     Violating Free Speech, and Right to Vote under U.S. Const. Amends. I & XIV, 42 U.S.C. § 1983.**

71.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

72.     For the same reasons as in Count III.B. above, just a different reason that Draft Charter Ordinance is unconstitutional, Prairie Village City Council by relying on Draft Charter Ordinance in passing the Bond Resolution violated Plaintiff's free speech, free association, equal rights, and right to vote under the 1st and 14th Amendments.

**COUNT IV**
**Declaratory Judgment that Draft Charter Ordinance No. 28 Substantively violates the Kansas Constitution because its title and body do not specifically provide notice that bond elections have been forever eliminated in Prairie Village.**

**A.     Violating Art. 12 § 5(c)(2) Kansas Constitution**

73.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

74.     Art. 12 § 5(c)(2) Kansas Constitution provides in pertinent part: **"Such charter ordinance *shall be so titled, shall designate specifically the enactment of the legislature or part thereof made inapplicable to such city by the adoption of such ordinance …."***

75.     Draft Charter Ordinance No. 28 issued in 2016 specifically for a $3M streetlights project for which the bonds have long since been retired is overbroad in that it attempts to bypass state statutes *ad infinitum*, without any public vote ever on any future bond projects.

76.     The draft Charter Ordinance No. 28 title does not mention anything about bond elections being forever nullified in Prairie Village.

77.    Draft Charter Ordinance No. 28 fails to "designate specifically" the portion of K.S.A. 13–1024a that is purportedly made inapplicable to Prairie Village—which is typically shown by striking out the statutory language or by specifically stating what is not longer applicable. Here the crucial election portion of the statute, requiring public vote before bonds may be issued. Instead, the statutory language is simply omitted.

78.    And, as shown above, this election portion of the statute, while simply omitted rather than specifically designated as being inapplicable, never added the requisite substitute provisions.

79.    As a result, Draft Charter Ordinance No. 28 was unconstitutional for failing to comply with Art. 12 § 5(c)(2) of the Kansas Constitution.

**B.    Violating Free Speech, and Right to Vote as well as Procedural and Substantive Due Process under U.S. Const. Amends. I & XIV, 42 U.S.C. § 1983.**

80.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

81.    Total and complete disenfranchisement of the electorate as a whole is patently and fundamentally unfair and, therefore, amenable to rectification in a federal court. *Bonas v. Town of N. Smithfield*, 265 F.3d 69, 75 (1st Cir. 2001) (where state rules mandate an election, the town's refusal to hold it would work a total and complete disenfranchisement of the electorate and would constitute a violation of due process in addition to violation of state law).

82.    By relying on Draft Charter Ordinance No. 28, which was flawed in many ways resulting in a lack of procedural due process, to intentionally deny Plaintiff and other taxpayer voters the right to be heard and to vote, in passing the Bond Resolution 2025-04, violated Plaintiff's free speech, and right to vote under the 1st and 14th Amendments, as well as

procedural and substantive due process.[10]

## COUNT V
**Declaratory Judgment that Bond Resolution 2025-04 is independently illegal.**

### A.    Violating state and local law.

83.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

84.    The City of Prairie Village attempted to make Bond Resolution 2025-04 "effective immediately."

85.    No statute, Prairie Village charter ordinance, or other ordinance authorizes bypassing public notice of City action and immediate effectiveness without exigent circumstances (and none were declared when the Bond Resolution was adopted).

86.    As a result, the public was never provided publication notice, and were deprived the reasonable opportunity for a protest petition to force a bond election, again depriving Plaintiff and others the right to vote guaranteed by statute.

87.    As a result, even if Draft Charter Ordinance No. 28 were legally valid in all respects, Bond Resolution 2025-04 would be defective and void.

### B.    Violating Free Speech, and Right to Vote as well as Procedural and Substantive Due Process under U.S. Const. amends. I & XIV, 42 U.S.C. § 1983.

88.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

89.    For the same reasons as in Count III.B. above, just a different reason that the Bond Resolution is illegal and void, it violated Plaintiff's free speech, free association, equal

---

[10] *But see* Justice Thomas assailing the existence of substantive due process in concurring opinion in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215, 330 (2022) (suggesting that the Privileges and Immunities Clause may serve a similar function).

rights, and right to vote under the 1st and 14th Amendments, as well as procedural and substantive due process.

**COUNT VI**
**Declaratory Judgment that the taxes revenues accrued and retained, and continuing to be accrued and retained, constitute illegal taxation.**

**A.    Violating state and local law.**

90.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

91.    The City has been taxing Plaintiff and the citizens of Prairie Village for years under the guise of paying for bonds on projects that have long since expired, and continues to do so, in amounts exceeding $1M. **Exhibit 9** – Streetlight Revenues transferred for another purpose.

92.    Ironically, one of the retired bonds was for the streetlight project originally contemplated by Draft Charter Ordinance No. 28. Section 5 of the Streetlights Bond Ordinance provides: "taxes levied and collected, shall be solely for the payment of the principal and interest on the Bonds." The "Bonds" is defined as the bonds for paying off the Streetlight Bonds, not future payment on the new City Hall bonds, yet the Prairie Village City Council has used the taxpayer money levied for the Streetlight Bonds as seed money for the new City Hall. This bait and switch was originally concealed from the taxpayers, but eventually became buried in the dense budget information. Regardless, it violates Section 5 of the Streetlight Bond Ordinance, and is continuing to be assessed and misapplied. **Exhibit 10** – Streetlight Bond Ordinance.

93.    This misuse of bond proceeds also violates K.S.A. 10-117.

94.    The legitimate way to create a capital improvement fund for a building such as a new City Hall requires a specific, transparent resolution to levy a tax under K.S.A. 12-1737(d) & (h). But the Prairie Village City Council did not do that because, again, it would have required

24

publication and notice to the Prairie Village taxpayers, permitting a protest petition leading to an election of the Prairie Village citizens.

95.    As a result, Plaintiff and the Prairie Village taxpayers were, and are being, illegally taxed, and have again been denied their right to protest and the right to vote on the tax.

96.    Indeed, K.S.A. 12-1737(c) & (h) specifically applies to issuing bonds for "acquiring or constructing city offices," essentially a City Hall, and it too requires an election of the people. Draft Charter Ordinance No. 28 does not purport to charter out of this statute.

97.    The use of taxpayer money levied on expired bonds in the past, and continuing to be done, should be declared illegal. And the taxpayer money accrued, and accruing, for the new City Hall should be declared illegal.

**A.    Violating Free Speech, and Right to Vote as well as Procedural and Substantive Due Process under U.S. Const. Amends. I & XIV, 42 U.S.C. § 1983.**

98.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

99.    Plaintiff's money or "pocketbook" is property and cannot be taxed without due process.

100.    By illegally taxing Plaintiff and other Prairie Village taxpayers, and by continuing to do so, Prairie Village City Council violated and violates Plaintiff's free speech, free association, equal rights, and right to vote under the 1st and 14th Amendments, as well as procedural and substantive due process.

**COUNT VII**
**Declaratory Judgment that the Defendant's actions violated or violate K.S.A. 60–907 and Injunctive Relief Enjoining the issuance of Bonds for the City Hall project referenced in Ordinance 2025-04 until authorized by a majority of the votes cast at an election held for that purpose.**

101.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth

herein.

102.    For the above stated reasons in Counts I through VII, the actions of Defendant constitute an illegal levy of a tax, charge or assessment, the collection thereof, or any proceeding to enforce the same.

103.    K.S.A. 60–907 provides prospective relief to enjoin such illegal activity. *Blevins v. Board of Douglas County Comm'rs,* 251 Kan. 374, 382, 834 P.2d 1344 (1992).

104.    Plaintiff is entitled to injunctive relief because he is likely to succeed on the merits of his claim. Specifically, Defendant's illegal deprivation of Plaintiff's and other Prairie Village residents, voters, and taxpayers through illegal, willful actions in violation of the City's ethical code, that violate the United States Constitution, The Constitution State of Kansas, and Kansas statutes should be enjoined.

105.    Plaintiff will suffer irreparable harm if injunctive relief is not granted, because when First Amendment interests are either threatened or being impaired, irreparable injury is shown. *Elrod v. Burns*, 427 U.S. 347, 348 (1976); *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir. 2003) (the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury) (cleaned up).

106.    This harm cannot be adequately remedied by monetary damages because the laws of free speech and the right to vote cannot be quantified, necessitating injunctive relief to prevent ongoing and future injury.

107.    The balance of equities favors Plaintiff, as the harm Plaintiff will suffer without an injunction mandating the City to follow the law and hold a public bond election outweighs any harm to Defendant, who would only be required to provide for maximum local control by allowing the citizens to decide if they want to incur 30 years of debt for a shiny new City Hall to

office only 22 people.

108.    Granting injunctive relief serves the public interest by protecting constitutional rights under federal and Kansas law.

109.    An injunction will prevent further violations of federal and state law that undermine public confidence in the government process, aligning with the public's interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks, for the reasons stated herein, (1) a declaratory judgment that:

a.    Resolution 2025-04 is null and void.

b.    Charter Ordinance No. 28 is null and void.

c.    The use of expired bond money to pay for the new City Hall bonds is illegal;

and  (2) injunctive relief:

d.    Preventing issuance of bonds for the new City Hall project as set forth in Prairie Village, Kansas Ordinance 2025-04.

e.    Requiring authorization by a majority of voters in a vote of the people in a bond election before the Defendant may issue bonds in excess of $100,000 in a year.

Respectfully submitted,

EDMUNDS LAW OFFICE, LLC

*/s/ Fritz Edmunds*
FRITZ EDMUNDS (KS Bar # 16829)
11715 W. 101st Street
Overland Park, Kansas 66214
(913) 669-3000
fritz@edmundslaw.com
ATTORNEY FOR PLAINTIFF