IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARC VIANELLO,

    Plaintiff,

    v.

CITY OF PRAIRIE VILLAGE, KANSAS,

    Defendant.

Case No. 2:25-CV-02383-JAR-BGS

MEMORANDUM & ORDER

Plaintiff Marc Vianello filed this action on July 16, 2025, against Defendant City of Prairie Village, Kansas ("the City"), challenging Defendant's issuance of general obligation bonds associated with building a new City Hall.[1] On July 25, 2025, Defendant moved to dismiss for lack of jurisdiction and for failure to state a claim.[2] The motion is fully briefed, and the Court is prepared to rule. For the reasons stated below, the Court grants Defendant's motion to dismiss for lack of standing.

**I.  Legal Standard**

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'"[3] Federal district courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States, or where there is diversity of citizenship.[4] "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is

---

[1] Doc. 1.

[2] Doc. 4.

[3] *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

[4] 28 U.S.C. §§ 1331, 1332.

lacking."[5] The "burden of establishing" a federal court's subject-matter jurisdiction "rests upon the party asserting jurisdiction."[6] Mere conclusory allegations of jurisdiction are not enough.[7]

Generally, a Rule 12(b)(1) motion takes one of two forms: a facial attack or a factual attack. "First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true."[8] "Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."[9]

## II. Background

Plaintiff first initiated this dispute in the District Court of Johnson County, Kansas, on June 19, 2025, challenging the City's issuance of the general obligation bonds without voter approval and debt limitations pursuant to Kansas law. The City moved to dismiss in the state court matter on July 1, and on July 16, Plaintiff voluntarily dismissed that case and filed the instant action. In this case, Plaintiff again challenges the City's ability to issue general

---

[5] *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1152 (10th Cir. 2015) (citing *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013)).

[6] *Id.* at 1151.

[7] *United States ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).

[8] *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) (citation omitted).

[9] *Id.* at 1003 (citation omitted).

obligation bonds without voter approval but now brings claims under 42 U.S.C. § 1983 and Kansas law.

According to Plaintiff's Complaint, this dispute is principally centered around the City Council's approval without public vote of Resolution 2025-04, which passed on June 16, 2025. The resolution authorized the issuance of general obligation bonds in the amount of up to $30,000,000.00 to pay for improvements to certain City buildings. The crux of this dispute is whether the City was required to put Resolution 2025-04 to public vote due to Defendant's obligations under the voter approval requirements and debt limitations of K.S.A. § 13-1024a.

According to Plaintiff, Defendant posits that it legally opted out of these requirements when, on July 18, 2016, it passed Charter Ordinance 28 titled, "A Charter Ordinance Exempting the City of Prairie Village, Kansas from the Provisions of K.S.A. § 13-1024a and Providing Substitute and Additional Provisions on the Same Subject Relating to the General Improvements and the Issuance of Bonds for the Purpose of Paying for Said Improvements; and Repealing Charter Ordinance 25."

Plaintiff raises several arguments that Charter Ordinance 28 and Bond Resolution 2025-04 were illegally enacted: (a) that the draft Prairie Village Charter Ordinance, which the City numbered '28' and allegedly enacted July 18, 2016, was actually only recommended to the City Council from the Committee of the Whole (the "Draft Charter Ordinance No. 28"), and is invalid because it was not officially adopted by the governing body, the City Council; (b) that the Draft Charter Ordinance No. 28 is invalid to the extent that the 2016 Draft Charter Ordinance No. 28, enacted to purchase streetlights, purports to exempt the City in 2025 from the voter approval requirements and debt limitations of K.S.A. § 13-1024a for issuing $30 Million in 30-year general obligation bonds for a new City Hall; (c) that the Draft Charter Ordinance No. 28 is

otherwise constitutionally ineffective at bypassing the statutory requirement for a majority vote of electors in public bond elections in general; (d) that the Draft Charter Ordinance No. 28 is inapplicable to the specific City Hall bond issue in particular; (e) that Bond Resolution No. 2025-04 for a new $30 Million City Hall is illegal because it violates K.S.A. § 13-1040a; and (f) that the use of taxpayer money from expired bonds to pay for the new City Hall bonds is illegal and void.[10]

The above arguments loosely structure Plaintiff's Complaint, which asserts seven counts, each seeking declaratory judgment that Defendant has violated Kansas state law through its actions in passing Bond Resolution 2025-04. Each count provides sub-counts alleging multiple violations under Kansas state law that in turn violate federal rights.[11] Defendant now moves to dismiss all counts.

### Discussion

The Court begins its analysis with Defendant's Rule 12(b)(1) argument that Plaintiff lacks standing to bring any of his federal constitutional law claims. The Court agrees that Plaintiff lacks standing.

**A.  Standing**

Article III of the Constitution gives federal courts the power to exercise jurisdiction only over "Cases" and "Controversies."[12] As the Supreme Court has explained, "[i]n limiting the judicial power to 'Cases' and 'Controversies,' Article III of the Constitution restricts it to the

---

[10] Doc. 1-11.

[11] The Court notes that Plaintiff structured his Complaint (Doc. 1) in a format that made the Court's ability to understand his claims unnecessarily arduous. Plaintiff, through his Complaint, provided the Court seven counts of declaratory judgment statements, each peppered with repeating state and federal law causes of action. The Court has done the work to unravel Plaintiff's Complaint and addresses his allegations below.

[12] *Jordan v. Sosa*, 654 F.3d 1012, 1019 (10th Cir. 2011).

traditional role of Anglo-American courts, which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law. Except when necessary in the execution of that function, courts have no charter to review and revise legislative and executive action."[13]

One of several doctrines reflecting Article III's case-or-controversy limitation on the judicial power is the doctrine of standing. That doctrine requires federal courts, before considering the merits of an action, to "'satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant [the plaintiff's] invocation of federal-court jurisdiction.'"[14]

Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing each element of standing "with the manner and degree of evidence required at the successive stages of the litigation."[15] Standing is evaluated based on the facts as they exist at the time the Complaint is filed.[16] At the pleading stage, the Court "'presume[s] that general allegations embrace those specific facts that are necessary to support the claim,'"[17] and "general factual allegations of injury resulting from the defendant's conduct may suffice.'"[18] Nonetheless, the Court is "not bound by conclusory allegations, unwarranted inferences, or legal conclusions."[19]

The Supreme Court has found the "irreducible constitutional minimum of standing" to contain three elements:

---

[13] *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009).

[14] *Id.* at 493 (quoting *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975)).

[15] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Tandy v. City of Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004).

[16] *Tandy*, 380 F.3d at 1284.

[17] *Lujan*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

[18] *Id.*

[19] *Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994) (citations omitted).

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result of the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."[20]

To establish standing for prospective injunctive relief, "a plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future."[21]

Plaintiff's Complaint asserts seven violations of his federal rights: (1) deprivation of his procedural due process; (2) deprivation of his substantive due process; (3) violation of his First Amendment right to free speech; (4) violation of his First Amendment freedom of association; (5) violation of his right to vote under the First Amendment; (6) violation of his right to vote under the Fourteenth Amendment; and (7) violation of his equal protection rights under the Eighth Amendment.[22]  Each of Plaintiff's federal claims concern the same action taken by Defendant: whether Defendant legally exempted itself from K.S.A. § 13-1024a, and, in turn, acted legally when it then passed Resolution 2025-04.

Plaintiff does not allege a single instance of Defendant taking an action that, irrespective of Kansas state law, violates a federal statute or constitutional right.  Each request for declaratory judgment invokes a violation of Kansas state law with a purported federal cause of action stemming from that initial state law violation.  Plaintiff's Complaint alleges through requests for declaratory judgment that Defendant's actions violate several Kansas state laws and Kansas

---

[20]*Lujan*, 504 U.S. at 560–61 (internal quotation marks and citations omitted).

[21]*Tandy*, 380 F.3d at 1283.

[22] Plaintiff informed the Court in his opposition to Defendant's motion to dismiss (Doc. 14) that he is no longer pursuing his Eighth Amendment equal protection claim.

constitutional protections: (1) violation of Kansas procedural due process rights; (2) violations of Article 12 of the Kansas Constitution, including §§ 5a(b)(3), 5(b), and 5(c)(2); (3) violation of K.S.A. § 10-117; (4) violation of K.S.A. § 60-907, and that Bond Resolution 2025-04 is independently illegal because "[n]o statute, Prairie Village charter ordinance, or other ordinance authorizes bypassing public notice of City action and immediate effectiveness without exigent circumstances (and none were declared when the Bond Resolution was adopted)."[23]

Plaintiff argues he has standing to bring this action challenging Defendant's actions due to his status "as both a municipal taxpayer and a voter."[24] But that alone is insufficient to establish standing. The Supreme Court has routinely upheld its general rule prohibiting standing based solely on status as a taxpayer. In two of its most recent cases concerning taxpayer standing, the Supreme Court twice recounted that "[c]ontinued adherence to the case-or-controversy requirement of Article III maintains the public's confidence in an unelected but restrained Federal Judiciary. If the judicial power were 'extended to every *question* under the constitution,' Chief Justice Marshall once explained, federal courts might take possession of 'almost every subject proper for legislative discussion and decision.'"[25]

However, the general rule against taxpayer standing is not as straightforward when considering challenges against a municipality. The Supreme Court in *Frothingham v. Mellon* recognized that because of "the peculiar relation of the corporate taxpayer to the [municipal] corporation," "resident taxpayers may sue to enjoin an illegal use of the moneys of a municipal

---

[23] Doc. 1 at Count V (Plaintiff does not cite a specific law in support of this Count. Rather, he simply asks for declaratory judgment that Bond Resolution 2025-04 violates "state and local law").

[24] Doc. 14 at 4.

[25] *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011) and *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (each quoting 4 Papers of John Marshall 95 (C. Cullen ed.1984) (emphasis in original)).

corporation."[26]  The Supreme Court has not offered much additional guidance on this notion.

In *Doremus*, which involved an Establishment Clause challenge, the Supreme Court recited its position in *Frothingham* that federal taxpayers' interests are too remote to establish standing but that municipal taxpayers' interests may be sufficiently direct.[27]  In doing so, the Supreme Court noted that a "taxpayer's action can meet this test, but only when it is a good-faith pocketbook action."[28]  There, the *Doremus* Court found that the plaintiffs failed to establish a direct monetary injury that would confer standing to raise such a challenge, as they did not allege that the Bible reading was "supported by any separate tax or paid for from any particular appropriation or that it adds any sum whatever to the cost of conducting the school."[29]  The plaintiffs also failed to provide any "information . . . as to what kind of taxes" they paid or to aver "that the Bible reading increase[d] any tax they [did] pay or that as taxpayers they are, will, or possibly can be out of pocket because of" the activity.[30]  In short, the *Doremus* plaintiffs failed to establish anything more than a hypothetical *de minimis* drain on tax revenues due to the challenged Bible reading.[31]  Further, the Supreme Court did not clearly indicate whether this pocketbook action was to apply to state or municipal taxpayers, or both.[32]

Plaintiff cites several cases concerning *municipal* taxpayer standing as an exception to the general rule prohibiting taxpayer standing.  However, these citations are inapposite to the issue at

---

[26] 262 U.S. 447, 486 (1923).

[27] *Doremus v. Bd. of Educ. of Hawthorne*, 342 U.S. 429, 433–34 (1942).

[28] *Id.*

[29] *Id.* at 433.

[30] *Id.*

[31] *Id.*

[32] The Tenth Circuit has recognized that subsequent Supreme Court decisions have characterized *Doremus* as a state taxpayer holding.  *See Am. Humanist Ass'n, Inc. v. Douglas Cnty. Sch. Dist. RE-1*, 859 F.3d 1243, 1258 (10th Cir. 2017) (citing *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 600–01 (2007); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 345 (2006)).

hand. The Tenth Circuit in *Am. Humanist Ass'n v. Douglas Cty. Sch. Dist. Re-1* provides us the most recent overview of the municipal taxpayer standing landscape.[33] There, the Tenth Circuit explained the Supreme Court's holding in *Frothingham* and acknowledged that the Supreme Court has reaffirmed municipal taxpayer standing with "little exposition or guidance in its application."[34]

Importantly, the Tenth Circuit also emphasized after its circuit survey in *Am. Humanist*, "[a] plaintiff's status as a municipal taxpayer is ***irrelevant for standing purposes*** if no tax money is spent on the allegedly unconstitutional activity."[35] There, while the Tenth Circuit did not decide whether to adopt the pocketbook standard, the Tenth Circuit did recognize that every sister circuit required a showing of an expenditure of municipal funds on unconstitutional activity.[36]

Here, Plaintiff fails to allege that tax money is spent on an unconstitutional activity. Rather, Plaintiff is challenging the method and process by which Defendant is utilizing its funds. This distinction is important; and while this distinction has not been explicitly addressed by the Tenth Circuit, other courts have noted its importance for the purposes of municipal taxpayer standing.

In *Feldman v. Bowser*, the U.S. District Court for the District of Columbia considered whether the plaintiff had standing as a municipal taxpayer to challenge the lawfulness of the

---

[33] 859 F.3d 1243, 1259 (10th Cir. 2017) (discussing the state of municipal taxpayer standing across circuits and at the Supreme Court).

[34] *Id.*

[35] *Id.* at 1259 (quoting *Freedom from Religion Found., Inc. v. Zielke*, 845 F.2d 1463, 1470 (7th Cir. 1988) (emphasis added)).

[36] *Id.*

9

overall method or process by which the city government made expenditures.[37] There, then District Judge Ketanji Brown Jackson noted that several courts have found that a challenge to the process by which a municipality seeks to use funds is a "purely process-based" claim that is a "ballot-box [issue] that [does] not cause cognizable injuries to taxpayers and cannot be adequately redressed in a federal court."[38]

The *Feldman* Court also recounted a recent Third Circuit case that is particularly useful to the facts before this Court.[39] In *Nichols*, the Third Circuit considered a taxpayer's challenge to the city's use of $52.5 million in municipal funds to pay for "an ocean outfall project" that had been allocated and approved for expenditure through a special election.[40] The *Nichols* plaintiff claimed that the special election itself (and therefore the downstream issuance of municipal funds) was illegal because the method by which the election was conducted violated the Fourteenth Amendment.[41] The Third Circuit rejected this argument, finding that the plaintiff failed to allege that the expenditure of the $52.5 million itself was illegal, rather than, as the plaintiff alleged, the method by which the election conducted was illegal.

Here, Plaintiff 's taxpayer challenge similarly fails. Plaintiff argues that Defendant's actions failed to adhere to *Kansas* state law and *Kansas* constitutional law when it exempted itself from K.S.A. § 13-1024a, and, in turn, illegally passed Resolution 2025-04. All of Plaintiff's claims, state and federal, stem from the underlying allegation that Defendant's method

---

[37] *See Feldman v. Bowser*, 315 F. Supp. 3d 299, 305 (D.D.C. 2018).

[38] *Id.* at 310 (citing *Brown v. Hansen*, 973 F.2d 1118, 1122 (3d Cir. 1992) ("Under [the political question] doctrine, courts generally refuse to scrutinize a legislature's choice of or compliance with internal rules and procedures.")).

[39] *Id.* (citing *Nichols v. City of Rehoboth Beach*, 836 F.3d 275 (3d Cir. 2016)).

[40] *Nichols*, 836 F.3d at 277.

[41] *Id.*

10

by which it is spending funds is independently illegal, therefore its use of those funds must also be illegal. All of Plaintiff's federal claims turn on whether Defendant's actions were acceptable under Kansas law, and Plaintiff expressly asks this Court to grant declaratory judgment finding Defendant's actions were unconstitutional under the Kansas constitution.[42]

As Plaintiff himself makes clear throughout his briefing, there would be no constitutional violations if Defendant legally exempted itself from K.S.A. § 13-1024a, which *Plaintiff* emphasizes is "the crux of this action."[43] Plaintiff is effectively using claims of constitutional injury to enforce his understanding of state law by mere virtue of being a taxpayer. As the *Feldman* Court notes, a plaintiff needs to show "that, if the challenged activity were to cease, those otherwise-unlawfully-expended funds could be redirected toward some lawful purpose of potential benefit to the taxpayer—thus demonstrating that the injury is redressable."[44] Here, if this Court were to enjoin Defendant's proposed expenditure, the Court would not redress Plaintiff's injury because a new expenditure through the same challenged conduct would present the same alleged injury to Plaintiff; again, underscoring that Plaintiff is asking this Court to rule on the legality of the *method* by which Defendant is spending funds.

In the alternative, Plaintiff also argues that he has standing as a voter.[45] As explained above, Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing each element of standing "with the manner and degree of evidence required at the successive stages of

---

[42] The Court is also aware that Plaintiff's Complaint is largely repetitious of his previously filed and voluntarily dismissed complaint filed in the District Court of Johnson County, Kansas.

[43] Doc. 19 at 7.

[44] *Feldman*, 315 F. Supp. 3d at 311.

[45] Doc. 1 ¶ 2.

the litigation."[46] This burden does not bind the Court to any "conclusory allegations, unwarranted inferences, or legal conclusions" that a plaintiff alleges.[47] Here, Plaintiff offers the Court nothing more than his own legal conclusions that Defendant's opting out of K.S.A. § 13-1024a is illegal under Kansas law, which in turn deprives Plaintiff of his right to vote on the issuance of the general obligation bond. The Court understands this alleged deprivation of a state-created right to vote is the basis for Plaintiff's substantive due process claim to establish federal standing, but Plaintiff's Complaint is unclear on this point.

Regardless, Plaintiff fails to point the Court to a single case in the Tenth Circuit or in Kansas state courts that found an even remotely similar action by a municipality to be in violation of state or federal law. Nor does Plaintiff direct the Court to any actions by the Kansas State Legislature that even potentially recognize his interpretation of the Kansas Constitution. Instead, Plaintiff attempts to rebut the Kansas Attorney General's Opinion that the *exact kind of action at issue here* is legally sound.[48] Plaintiff has simply failed to establish he was deprived of a protected voting interest and therefore he lacks injury to establish standing as a voter.

In sum, the Court is unable to find standing for federal claims that effectively ask this Court to determine whether a municipality's actions violate state law. Federal court is not an appropriate forum for municipal taxpayers to challenge whether their municipality properly followed state law. To find otherwise would effectively allow for any municipal taxpayer to challenge any municipal spending action in federal court under the guise of constitutional injury.

---

[46]*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Tandy v. City of Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004).

[47]*Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994) (citations omitted).

[48] Kansas Attorney General Opinion No. 80-229 ("A city may exempt itself by charter ordinance from the issue limitations of K.S.A. 13-1024a and may authorize the issuance of bonds in amounts greater than that authorized by said statute.").

Such a finding would also run afoul of § 1983's prohibition of liability based solely on a violation of state law.[49] Accordingly, the Court finds Plaintiff has failed to establish standing to bring his federal claims, and thus the Court lacks subject matter jurisdiction.

### B. Supplemental Jurisdiction

Whether to exercise supplemental jurisdiction is committed to the Court's sound discretion.[50] 28 U.S.C. § 1367 "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'"[51] Upon a pretrial disposition of the federal claims, district courts will generally dismiss the state law claims without prejudice.[52] "When 'the parties have already expended a great deal of time and energy on the state law claims,' it is appropriate for the 'district court to retain supplemented state claims after dismissing all federal questions.'"[53] "If, however, the parties have not shown they have spent a great deal of time on the state law claims, the 'district court should normally dismiss supplemental state law claims after all federal claims are dismissed.'"[54] "Notions of comity and federalism demand that a state court try its own lawsuits,

---

[49] *Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir. 2001) (citing *Davis v. Scherer*, 468 U.S. 183, 194–96 (1984)).

[50] *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997); *see also Anglemyer v. Hamilton Cty. Hosp.*, 58 F.3d 533, 541 (10th Cir. 1995).

[51] *City of Chicago*, 522 U.S. at 173 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *see also Gold v. Local 7 United Food & Commercial Workers Union*, 159 F.3d 1307, 1310 (10th Cir. 1998), *overruled on other grounds by Styskal v. Weld Cnty. Comm'rs*, 365 F.3d 855 (10th Cir. 2004).

[52] *Ball v. Renneri,* 54 F.3d 664, 669 (10th Cir. 1995).

[53] *Villalpando ex rel. Villalpando v. Denver Health & Hosp. Auth.*, 65 F. App'x 683, 688 (10th Cir. 2003) (quoting *United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002)).

[54] *Id.*

absent compelling reasons to the contrary."[55] The Tenth Circuit has "repeatedly recognized that this is the preferred practice."[56]

Here, Plaintiff asks this Court for declaratory judgment that Defendant has violated Kansas constitutional law and the Prairie Village City Code when it exempted itself from K.S.A. § 13-1024a, and, in turn, acted illegally when it then passed Resolution 2025-04. The Court has disposed of all federal questions at this early stage of litigation, before the parties have spent any significant time on the state law claims. Accordingly, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Dismiss (Doc. 4) is **granted**.

**IT IS SO ORDERED.**

Dated: November 3, 2025

S/ Julie A. Robinson
JUDGE JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[55] *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).

[56] *Gaston v. Ploeger*, 297 F. App'x 738, 746 (10th Cir. 2008).